UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LHOEDIA S. MACK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 12-CV-0074-CVE-TLW |
| ) | |
| CAROLYN W. COLVIN, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Before the Court is the magistrate judge's report and recommendation (Dkt. # 20) recommending that the Court affirm the Commissioner of the Social Security Administration's decision to deny plaintiff Lhoedia S. Mack's claim for disability benefits. Plaintiff objects to the report and recommendation and argues that benefits should be awarded, or, in the alternative, that the case should be remanded for further administrative proceedings. Dkt. # 21. Defendant has not filed a response to plaintiff's objection.

**I.**

On September 30, 2008, plaintiff's grandmother, Ernestine Mack, filed an application on behalf of plaintiff for supplemental security income, alleging an onset date of September 18, 2008. Dkt. # 14-5, at 2-8. Plaintiff was 15 years old at the time of the application, and her grandmother claimed that plaintiff was disabled because of attention deficit hyperactivity disorder (ADHD), asthma, a learning disability, back problems, and nose bleeds. Dkt. # 14-6, at 6. Plaintiff's claims were denied initially and on reconsideration. Dkt. # 14-3, at 2-3. Plaintiff requested a hearing

before an administrative law judge (ALJ), and a hearing was set for March 9, 2010. Dkt. # 14-4, at 8-9.

Plaintiff's grandmother appeared with counsel at the hearing and advised that plaintiff was ill. Dkt. # 14-2, at 58-60. The ALJ reset the hearing for June 8, 2010. Dkt. # 14-4, at 30. Plaintiff's grandmother, plaintiff, and plaintiff's counsel were present at the June 8 hearing. Dkt. # 14-2, at 38. Plaintiff's grandmother stated that she filed the application on plaintiff's behalf because plaintiff would "lash out" at her. Id. at 41-42. The ALJ elicited answers from plaintiff regarding school and her participation in the Reserve Officers' Training Corps (ROTC). Id. at 41-44. Plaintiff stated that she was in Army ROTC and she liked it because it "teaches you discipline . . . and leadership [and] how to do something with your life and everything." Id. at 43-44. Plaintiff stated that, in ROTC, she marched, performed in parades, and did "everything that ROTC members can usually do to help [ ] out the Nation or anything like that." Id. at 44. The ALJ asked whether plaintiff used a rifle, and plaintiff stated that only "color guard students" used rifles and that the school also had a "drill team." Id.

Plaintiff testified that she "sometimes" does not get along with her grandmother, and that she was no longer in special education at school. Id. at 45. Plaintiff's attorney then asked plaintiff about her "emotional issues." Id. at 45-46. Plaintiff stated that she would get mad and "yell for no reason" at her grandmother and brother, specifically when she was asked to do something while she was reading. Id. at 47. Plaintiff also testified that she usually gets mad when someone "mess[es] with [her] when [she's] reading" and that she sometimes gets along with fellow students and sometimes she does not, especially when the other students are "really loud." Id. at 47. Plaintiff stated that she would start fights with her brother and that the police would have to get involved. Id. at 49.

Plaintiff stated, however, that aside from problems with her brother, she "get[s] along with everybody around the neighborhood." Id. at 52. Plaintiff also complained that she had excessive bleeding during her menstrual cycle. Id. at 51. Plaintiff testified that she would "get mad at anybody that comes near [her] when [she is] in that stage," and that she also has to go to the restroom multiple times during class, which makes her teachers mad. Id. at 51-52.

Plaintiff's attorney then questioned plaintiff's grandmother. Id. Plaintiff's grandmother stated that she was "concerned about [plaintiff's] health" because she and plaintiff "practically live[d] at the hospital" when plaintiff had asthma. Id. at 53. The ALJ questioned plaintiff's grandmother about her statement that they "live at the hospital," and plaintiff's grandmother confirmed that she and plaintiff would be at the hospital "for two or three nights" and that she had to take plaintiff to the hospital "quite often," which she clarified meant "two weeks at a time." Id. Plaintiff's grandmother testified that plaintiff's menstrual cycle was "not normal" but confirmed, upon questioning by the ALJ, that she had never made an appointment with a doctor regarding that complaint. Id. at 53-54. She also stated that "[t]hey wanted to put her in the hospital to get her to lose weight but she eats, eats, eats, eats[,] [and] [s]he has a very nervous condition." Id. at 54.

The ALJ issued a written decision on October 29, 2010, denying plaintiff's claim for disability benefits. The ALJ noted that plaintiff was born on May 4, 1993 and was therefore an adolescent when the application was filed. Id. at 24. The ALJ found that plaintiff had not engaged in substantial gainful activity since the date of the application, and that plaintiff had several severe impairments, including: "borderline intellectual functioning; oppositional defiant disorder; and a generalized anxiety disorder." Id. However, the ALJ also found that, although plaintiff's grandmother alleged plaintiff had rheumatoid arthritis and asthma, those were not medically

determinable impairments. Id. The ALJ noted plaintiff's grandmother's testimony that she and plaintiff live at the hospital; however, the ALJ stated that there is no medical evidence that plaintiff was diagnosed with either rheumatoid arthritis or asthma or that plaintiff had ever been to an emergency room or admitted to a hospital. Id.

The ALJ found that plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." Id. In making that finding, the ALJ stated that he gave specific emphasis to "Listing 112.05 (pertaining to mental retardation) and Listing 112.06 (pertaining to anxiety disorders)." Id. at 25. And, the ALJ stated that "there is no evidence of another physical or mental impairment imposing an additional and significant limitation of function." Id. The ALJ also found that plaintiff "does not have an impairment or combination of impairments that functionally equals the listings." Id. The ALJ reviewed "all of the relevant evidence in the case record." Id. Further, the ALJ noted that he had reviewed "the 'whole child' in making findings regarding functional equivalence." Id.

In considering plaintiff's symptoms, the ALJ followed a two-step process. Id. First, the ALJ determined "whether there [was] an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce [ ] [plaintiff's] pain or other symptoms." Id. Second, the ALJ evaluated "the intensity, persistence, and limiting effects of [ ] [plaintiff's] symptoms to determine the extent to which they limit[ed] [ ] [plaintiff's] functioning." Id. at 26. The ALJ noted that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must make a finding on the credibility of the statements based on a consideration of the entire case record." Id.

The ALJ reviewed plaintiff's testimony, including that she liked ROTC. Id. The ALJ noted that plaintiff testified that she "marched in parades, went to football games, held up flags, and did drill team and color guard." Id. The ALJ also reviewed plaintiff's grandmother's testimony that plaintiff "lashes out at her" and that she and plaintiff live at the hospital. Id. The ALJ noted that testing on August 24, 2000 revealed that plaintiff was "functioning in the borderline range of intellectual function," but that plaintiff "was reading, spelling, and performing math at grade level." Id.

The ALJ also noted that John W. Hickman, Ph.D., performed a psychological evaluation on September 28, 2010. Id. The ALJ reviewed Dr. Hickman's findings, including that plaintiff had "schizoaffective disorder, bipolar type," and that plaintiff's "impairments met the requirements of Listing 112.03." Id. However, the ALJ stated that plaintiff had not sought or received mental health treatment and that there was "no mention of a schizoaffective disorder prior to Dr. Hickman's one-time evaluation." Id. The ALJ stated that, although plaintiff "told Dr. Hickman that she had started hearing voices when she was 14 or 15," neither plaintiff nor her grandmother had mentioned that symptom at the hearing. Id. The ALJ again noted that plaintiff was active in the ROTC and that she had not been in special education since 2003. Id. The ALJ concluded that "[t]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance." Id. at 26-27. Thus, the ALJ found that Dr. Hickman's opinion could not be given controlling weight because it conflicted with "Dr. Hickman's own statements during evaluation and inconsistent with the other substantial evidence." Id.

Thereafter, the ALJ reviewed the six functional equivalence domains: "(1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4)

moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being." Id. at 22, 27-32. As to each domain, the ALJ first reviewed the applicable statutes and guidelines. Id. The ALJ found that plaintiff had less than marked limitation in acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for herself. Id. at 28-30. Further, the ALJ found that plaintiff had no limitation in the domains of moving about and manipulating objects and health and physical well-being. Id. at 29-32.

The Appeals Council denied plaintiff's request for review, and the ALJ's written decision serves as the Commissioner's final decision on plaintiff's request for benefits. Dkt. # 14-2, at 2. Plaintiff filed this case on February 17, 2012, and the matter was referred to a magistrate judge for a report and recommendation. The magistrate judge entered a report and recommendation (Dkt. # 20) recommending that the Court affirm the Commissioner's decision to deny plaintiff's application for benefits.

**II.**

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within 14 days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

### III.

Plaintiff raises three objections to the magistrate judge's report and recommendation. Dkt. # 21. First, plaintiff argues that the ALJ failed to consider whether plaintiff met the listings for schizoaffective disorder and ADHD. Second, plaintiff argues that the ALJ failed to properly consider medical source evidence. Third, plaintiff alleges the ALJ failed to perform the proper credibility analysis. Defendant has not responded to plaintiff's objections.

"A child under eighteen years of age is 'disabled' if the child 'has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Briggs ex rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001) (citing 42 U.S.C. § 1382c(a)(3)(C)(I)); see also 20 C.F.R. § 416.924(a). The Tenth Circuit has outlined the three-step process:

> The [ALJ] must determine, in this order, (1) that the child is not engaged in substantial gainful activity, (2) that the child has an impairment or combination of impairments that is severe, and (3) that the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404.

Briggs, 248 F.3d at 1237 (citing 20 C.F.R. § 416.924(a)). "In making the third determination–whether a child's impairment meets or equals a listed impairment–the ALJ must consider whether the impairment, alone or in combination with another impairment, 'medically equals or functionally equals the listings.'" Id. (citing 20 C.F.R. § 416.924(a)) (footnote omitted). "The ALJ considers how a child functions in his activities 'in terms of six domains':[ ] '(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being.'" Id. (quoting 20 C.F.R. § 416.924(a)) (citation omitted).

The ALJ issued a written decision that was reviewed by the Appeals Council, which is a final decision by an administrative agency. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Id. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

**A.**

Plaintiff argues that the ALJ failed to make the proper credibility findings. The magistrate judge stated that "[t]he ALJ found both plaintiff and her grandmother not credible." Dkt. # 20, at 17. However, the magistrate judge noted that "the ALJ's credibility analysis is not as clearly stated . . . as it could be." Id. at 17 n. 6. The magistrate judge reviewed the ALJ's opinion, including the ALJ's review of the testimony and medical evidence, and concluded that, because the record supported the ALJ's findings, and the ALJ cited specific medical evidence in his opinion, the failure to include clear credibility findings was not reversible error.

"Credibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quotation and internal quotation marks omitted). "However,

findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (internal quotation marks omitted) (citations omitted). The ALJ is not required to specifically state that he finds a certain statement credible or not credible. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1169 (10th Cir. 2012). "Based upon his evaluation of the entire case record, the ALJ may find all, only some, or none of an individual's allegations to be credible." Briggs, 248 F.3d 1235 at 1239 (internal quotation marks omitted). However, credibility determinations "can not be based on intangible or intuitive reasons; rather they 'must be grounded in the evidence and articulated in the determination or decision.'" Id. (quoting Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, S.S.R. 96-7p, 1996 WL 374186, at *4 (July 2, 1996)).

Here, the ALJ reviewed some of plaintiff's and her grandmother's testimony.[1] However, the ALJ failed to state which statements or allegations he found not credible. With the exception of the ALJ's discussion regarding conditions that were not medically determinable (Dkt. # 14-2, at 25), the ALJ wholly failed to contrast statements made by plaintiff or her grandmother with objective medical evidence, which might allow the Court to infer that the ALJ found such statements not credible. The ALJ recited the standard that he was required to follow, including making a credibility finding (Dkt. # 14-2, at 26), but did not ever state which testimony he found credible or not credible. The Court will not make credibility findings on behalf of the ALJ. See Briggs, 248 F.3d at 1235 (citing Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) ("The failure to make credibility findings . . . fatally undermines the Secretary's argument that there is substantial evidence adequate

---

[1] The ALJ incorrectly noted, however, that the plaintiff testified that she "did drill team and color guard" (Dkt. # 14-2, at 26), which was an inaccurate representation of plaintiff's testimony.

9

to support his conclusion that [plaintiff] is not under a disability.")). Therefore, the Court finds that the case should be reversed and remanded to allow the ALJ to make proper credibility findings.

The Court declines to reach plaintiff's other objections to the report and recommendation because the failure to make proper credibility findings is a sufficient reason to remand the case for further proceedings. Further, the Court finds that, although plaintiff requests an award of benefits, such an award from this Court would be improper.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 20) is **rejected**, and the Commissioner's decision to deny plaintiff's claim for disability benefits is **reversed and remanded** for further proceedings. A separate judgment is entered herewith.

**DATED** this 8th day of April, 2013.

*[signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE